Good morning, Your Honors. May it please the Court, my name is Stephen McCanny and I represent Eugene Towers derivatively on behalf of Walt Disney Corporation. We, I would like to reserve three minutes for rebuttal. We are asking that the Court reverse the District Court's dismissal of plaintiff's derivative shareholder complaint brought against officers and directors of Disney Corporation. We submit three issues for the Court's review, but for the sake of time I'll be addressing two of what I believe are the most important issues, whether the Court erred when it found that demand was not futile and whether the Court erred in abuse discretion and whether the Court erred when it found that plaintiff's claims were not futile. In coming to its determination, it viewed plaintiff's allegations in isolation, it construed the allegations in favor of defendant, and it also required that plaintiff plead smoking gun evidence. Now that's not the standard here. The standard is that allegations should be construed in plaintiff's favor. They should, he's not required to plead smoking gun evidence. An analogous case here would be Rosenblum v. Piatt, Ninth Circuit case. There, the Court found those three same critical mistakes were made that were made here as well, that essentially that the lower court had construed evidence in favor of defendants, that you know, the Court required smoking gun evidence. And coming to that conclusion, I don't think the District Court used the phrase smoking gun, did it? Not necessarily smoking gun evidence. Except actual knowledge, right? Actual knowledge, correct. Yeah. Yes. And so it didn't say actual gun knowledge, but essentially how its decision is read that it's essentially requiring smoking gun evidence. I guess they did use smoking gun at one point. I see it now. Okay. Go ahead. Counsel, you referred to Rosenblum while we're talking about Rosenblum. Do you agree that despite your pleading, suggesting that we review this, these two issues, de novo, that under Rosenblum, the standard of review is abuse of discretion? I agree with Judge Reinhart's conclusion in that case, specially concurring where he said if the Court determines that, it would be outcome determinative. It urged, he urged the Court to reassess whether it should apply a de novo review. Well, that's not, our former colleague is a splendid fellow, but that's not the law. You know, that was his view in a concurrence. He thought we ought to look at it differently. But the law right now is abuse of discretion is the standard, right? I don't necessarily agree that the standard right now is abuse of discretion. It's a little unclear. For example, defendants cite to a single case for the abuse of discretion standard, which is Lampers v. Winn. And that case provides no real analysis for why abuse of discretion should apply. What case would you cite that you believe would require us to review the two issues that you present on a de novo basis? I would say you'd have to look at the rationale behind whether de novo and abuse of discretion should apply. You're not answering my question. I'm asking what case or cases. Well, for example, an animal litigation fund. In that case, it was brought in, it was an in-bank case that was brought before the Court where it assessed whether a summary judgment under a FOIA request should be assessed for the deferential review or de novo review. But with respect, counsel, we're talking about a shareholder derivative action. Rosenblum talks about that kind of a case. Correct. It says the abuse of discretion standard is what we use. So I'm asking you is, what case, other than Rosenblum, gives you the authority to tell us that our review should be de novo? You're right, Your Honor. There is no specific case on the part. Okay. So you're — this is precatory language on your part, right? Correct, yes. Okay. So we'll review. Well, would it make a difference? I mean, there's certainly plenty of other circuits, including the Seventh Circuit, that do say that it should be de novo. But before they would even consider — presumably would consider asking an in-bank Ninth Circuit to change the standard, it's got to make a difference. What Judge Reinhardt said in Rosenblum is at least there, it wouldn't make any difference. And you can see why it wouldn't make any difference. If you're going to argue that, what difference would it make here? Correct. I don't think it would make a difference. I feel under either standard, de novo or discretionary review, you're correct, Your Honor, that it wouldn't. But if the court does believe that it would make a difference, I believe that it should follow Judge Reinhardt's proposal. It should be your argument as to how it could make a difference. You have to persuade them. Well, I don't — correct, Your Honor. It would not make a difference in this case. So I think under the abuse of discretion standard, that what the court did abuse its discretion when it found demand was not futile. And so Rosenblum is — provides a lot of guidance on that issue. There, they showed — they provided reasonable inferences that the court realized that it was — that the directors knew that they were committing illegal conduct. For example, one inference was that off-label sales of allergen was important to the company. Another is that they actively monitored those off-label sales of Botox. Another inference is that they reviewed and approved funding for organizations that promoted those off-label sales. Either of those individually does not necessarily show that they should have been aware of this illegal conduct. But, Counsel, with respect, in this case, I think you have a very different situation. Can you point to any allegations in the amended complaint that actually demonstrate that any member of the board had even knowledge of the alleged conspiracy, let alone a majority of the board? What part of the complaint? Sure. If I was going to point to it, I would have to point to specific discussions between November of 2005 to November — to January of 2006, where there was various discussions regarding the Pixar acquisition. But first, you have to go back and assess what was going on during that time. During that time, there were discussions with high-level executives at Disney discussing these gentlemen agreements not to poach each other's employees by cold call. Okay. But remember what I asked you. I'm talking about the board of directors. There's no question, in my mind, that there were some officers of Disney who knew of and indeed perhaps were the primary instigators of this. And certainly Steve Jobs in Pixar was doing this. But the standard here is the board of directors. Correct. And what I'm asking is, where in the amended complaint is there — are there one or more allegations that members of the board — not officers — members of the board had knowledge of the conspiracy? And once you establish that, is there an allegation that a majority of the board had such knowledge? Or is that — Yes. I would say it's the board meeting minutes where they're discussing issues with labor. Okay. But that's all very general stuff. I'm talking about a specific allegation where you say board members X, Y, and Z were told on such and such a day that this was going on. You don't have anything like that, do you? No. Correct, Your Honor. But that would be requiring a smoking gun of evidence. What we're — the standard that we're applying here — What's the closest thing you have? Just general references to the kind of discussions that go on when you acquire a company? No. I don't think those are — those are unremarkable discussions of the company. I think you have to consider — They're pretty vanilla, indeed. The judge said so. You're correct. I admit they are vanilla if you just view them in isolation. But you have to view them in context of the case as a whole. These high-level executives talking about these settlement agreements, the fact that — But, again, counsel, I don't mean to be disrespectful, but the reality is here, you're trying to have a smoke coming out from this incestuous pond that people are having discussions. That doesn't work here. You've got to play it with some specificity, maybe not a smoking gun, but you've got to show some crossover between the officers and the board members. I searched in vain for anything in the complaint, the amended complaint, that shows that any director, let alone a majority of the directors, were told about or knew about this conspiracy. Where am I wrong? What have I missed? I'm not saying you've missed anything, necessarily, but I read the complaint to be very similar to Rosenblum, where they didn't allege that these directors actually, explicitly were told of this conspiracy. They alleged, hey, they talked about this off-label sales of Botox, they monitored it, they approved funding for organizations that did that, which is very similar here. Here, we're alleging that competition and restraining increase in labor wages was very important to the company. This was referred to in SEC filings. You have these high-level executives talking in emails all about restraining these wages and not employees. But even the SEC, in its action, permitted, in connection with mergers and acquisitions, to have discussions about employee issues and agreements and so on. So they weren't doing anything illegal about that, right? No, not necessarily. You're correct. But I believe that viewing all the facts in totality does indicate that they were advised of these illegal agreements. I mean, if you look at the board members, they're not... I'm sorry, Your Honor. You think they were? Not think they were. They were. The reasonable inferences... No, no. What the district court says is the board minutes are rather unremarkable. Do you disagree with that? I do disagree with that, because the way that the district court read these facts was in isolation. It didn't consider what was going on at the time, and that perhaps alone, if this was just a standard board meeting talking about acquisition, they would be unremarkable. But it shows that, together with this conspiracy, it references languages in these emails. The disastrousness if labor wages increases, having to maintain the relationship between Disney and Pixar, employees potentially defecting, considering that they acknowledge in SEC filings and in emails that if these anti-poach agreements didn't, if companies didn't buy by them, it would be disastrous. It would raise labor wages. So these, it's definitely a reasonable argument. Your basic argument is that you're supposing that it was discussed but not reflected in the minutes without any other evidence, right? Sorry, Your Honor. Could you repeat that? You're supposing that it was discussed without any evidence from the minutes or direct evidence otherwise. Correct, Your Honor. I don't believe we need to... Time is running down. Do you want to get to the statute of limitations? Yes, Your Honor. I would like to get to the statute of limitations. We believe the court also erred when it found that plaintiff's claims were barred by the statute of limitations. Primedia provides a standard in that case of whether a shareholder is objectively aware of claims, the harm that would provide him with inquiry notice giving rise to his claim. And there's this two-step analysis for that. Whether there's facts that would arouse a claim. The second step is whether they could initiate an investigation in order to uncover facts to support that. The DOJ investigation in 2010, right? Why wasn't that enough to trigger inquiry notice? Because it did not actually reference Disney. It didn't even reference that Pixar was a subsidiary of Disney. In that case, a shareholder would have to be aware of the fact that Pixar is a subsidiary of Disney. And even then, that doesn't necessarily impute the fact that Disney was involved in any conspiracy at that point. A shareholder wasn't reasonably aware of this conspiracy until documents were unveiled in May of 2014 in the HITECH employees' antitrust litigation where they revealed documents. And at that point, there were emails and such referencing Disney being a part of that case. That's when a reasonable shareholder, after doing an investigation, was on notice that Disney was a part of this conspiracy. We really don't get to that. We don't think that your pleading is sufficient on the specificity of what you needed to plead, correct? I disagree with that. I believe that we did plead what was necessary. We showed the fact that a reasonable shareholder wouldn't have been suspicious of the fact that Disney... I'm just saying, assuming we agreed with you when they were on inquiry notice, it doesn't get you any place if we don't think that you pled sufficiently anyway. Not necessarily. I think it would still... If you lose the futility argument, it doesn't make any difference on whether you're on inquiry notice. Correct. You're right, Your Honor. But still, it would be bad precedent to hold shareholders to this higher standard of having to determine just by the basis of a company being a subsidiary of another company that that parent company must have been involved in the conspiracy. I think Judge Metzen may have had a question. I can wait. All right. Do you want to reserve? Oh, sure. I would like to reserve the rest of my time. Thank you, Your Honor. Good morning. If it pleases the Court, my name is Alan Ruby, and I represent Defendant Appellee Robert Iger and his co-defendants. I'll try to be to the point. I think that the appellant is being more than a little unfair to the trial court. I mean, we have the trial court's decision, the district court's decision in this case, and it goes through the allegations of the complaint. It recites the procedural history of the case. It addresses, and we didn't hear anything to the contrary, it addresses the allegations that might be the most salient, and it explains why, in the district court's view, the facts alleged do not give rise to plausible, or one might say reasonable, inferences along the lines of what's suggested here. The district court did not require a smoking gun, whatever that is. In fact, at page 8 of the district court opinion, the district court quoted the language from Rosenblum, which says you don't need a smoking gun. So, as I say, it's not exactly fair to Ms. Carroll. Counsel, can I switch you over to a slightly different aspect of this? Has the plaintiff in this case pleaded viable breach of fiduciary duty claims against officers Catmull, Cook, and Bergman? I really try hard not to answer a question with a question, but I would first try to break it out to breach of fiduciary duty to whom? I don't think there have been plausible allegations of breach of fiduciary duty as to Pixar or to Disney because of what I think of as a discontinuity in the times of what's pleaded. You would agree these officers, certainly the Department of Justice, thought they were involved in something that was illegal, right? It certainly appears so, yes. Okay. And in that case, there were some agreements reached, there were some lawsuits, I guess some of them are still pending, against these officers, right? Yes, Your Honor. And so from your perspective, Mr. Iger, of course, was not one of the ones I named, but since you don't represent any of these folks, you have any – let me say it to you this way. If an officer is named as having known of the conspiracy, I'll call it, there is no impediment in terms of pleading in this case, right? I mean, either they are or they aren't. You're going to go forward with that. You claim the officer knew it. It's an individual thing. You don't have it to have a board involvement, right? A claim, if I understand the question correctly, Your Honor, yes, right. If there's a well-pleaded claim against an officer, then that is not the terrain we're covering in this case. So regardless of what we do with the board, a claim can still exist against these three people that I named without doing any damage to the board or Mr. Iger in this case. Is that correct? Yes, that's correct. Again, if I understand the question correctly, we're not asking for – did not ask in the district court and don't ask for the affirmance of an order that seeks to enforce the legal protections of anyone other than the board. Okay. Let me ask you, and I agree with my colleagues here, if we don't get past the notice issues, the futility issues, we wouldn't get to this question. But for a moment, let's assume that they had pled adequately. Do you think it's reasonable to require a shareholder to be suspicious of potential wrongdoing of a company where allegations are made against the subsidiaries alone without mentioning the parent company? And in this case, we're talking Pixar and Disney. The DOJ's action did not initially name Disney, correct? Well, it doesn't use the word Disney. I have something more to say about that, if you may. It will. But to answer Your Honor's question, no, the September 2010 papers by the Justice Department did not mention Disney by name. And do you believe that – Consent decree. I'm sorry. Go ahead. And the consent decree didn't, right? Didn't name Disney. By name. That's true. Sorry. But I don't want to interrupt Your Honor. I just wanted to follow through. Is it fair for purposes of equitable tolling to say that a reasonable shareholder should have assumed if the subsidiary was named that Disney would also be implicated? Well, Your Honor, in this particular case, if I could please invite the Court's consideration if that's material. And I agree that we probably oughtn't to get there. I'm not saying we're going to. I'm just exploring this aspect. If it were material – if the Court would please. The excerpt of record at 95 embraces the proposed stipulation that was submitted along with the complaint that was filed along with the settlement. There were a cache, C-H-E, of documents all submitted at once. And, actually, the proposed stipulation, I think, is interesting and germane to what Your Honor is asking about because it doesn't mention Disney by name, but it does say that the relief – it specifically calls out, as to Pixar, that the relief that is ordered by the consent decree, by the judgment, applies to the parent or parents and directors of the parents. So I think of this as, you know, perhaps Disney isn't named by name, but the question is would a reasonable shareholder, an objective test, seeing what the consent decree calls for, would a reasonable shareholder think, maybe I ought to have a look, I ought to inquire because it's inquiry notice. So should I, without jumping to conclusions, do an inquiry that's directed to the directors? The other feature of this is that the stipulation, which is brief, also says that the supposed combination, the deal, applied to all of the employees of Pixar and Apple. And, again, I think the description of a deal that applies to all of the employees, which was, according to the stipulation, put in place by senior executives, they have to be pretty senior to reach all of the employees of these sizable enterprises. So, in other words, it's not possible, I think, fairly to read the stipulation and say that this, whatever was going on, was limited somehow to a division or a department or a manager of the Omaha office. I mean, pretty clearly what the Justice Department was alleging, at least, reached to the highest levels of the companies. And then a reasonable shareholder, I think, not in my opinion, but I think given those circumstances, it would not be unreasonable to expect a shareholder to inquire as to, well, who exactly is involved. When we consider what a reasonable shareholder is, do we take into account what would be in the business news at the time in question? In other words, Disney's acquisition of Pixar was highly, highly publicized at that time. Is that something that, in terms of inquiry notice, is fair to put on a reasonable shareholder, that that shareholder would, if at all knowledgeable, would have been aware that Disney had acquired Pixar? I believe yes, Your Honor. I think that there is no hearsay rule. I think that a reasonable shareholder is someone who might be expected to pay reasonable or ordinary attention to events pertaining to his or her financial holdings. After all, by definition, this is someone who has a financial interest in the affairs of Pixar. And this is a reasonable shareholder is someone who receives periodic communications from the company and the parent or about the parent. So I don't think it is at all unreasonable to suggest that this reasonable shareholder is exposed to media, to business communications back and forth from the company in the context of the idea of inquiry notice. Do we, in considering a reasonable shareholder, consider the professionals or others who advise the shareholder? For example, many people buy stock and they have a stockbroker. Others are involved with law firms and so on. Is the reasonable shareholder, if you will, treated as having knowledge that his stockbroker, who handles if he has discretion, that the stockbroker has on his behalf? I don't know that, at least in this case, I don't know that the definition needs to extend that far, frankly. I'm not saying it doesn't. I'm just exploring this issue. I wonder if a reasonable place to draw the line about what a reasonable shareholder is, is the question of whether the information is, here's the word again, reasonably accessible to that shareholder. If information were reasonably accessible to this hypothetical shareholder only through a specialized advisor, well, I think then for purposes of inquiry notice we might have a different opinion, might pursue a different route. But here we're talking about information which is certainly available, certainly freely available. Who owns Pixar? Of whom are they a subsidiary? Who are these officers and directors we're talking about? It's really the question, the only question is, well, is it unmissable? Is it impossible for the shareholder really to know that? And I don't think that comes into the calculus here. Unless the Court has other questions where I hopefully could be of help, I, you know, waive the balance of my time. That's it. Roberts. Thank you, counsel. Thank you. Rebuttal. I would just like to quickly point out that when the Court came to its decision regarding plaintiff's claims being barred by the statute of limitations, it relied on Google, which is misplaced. First of all, Google at the demur stage was denied on the statute of limitations. The motion to dismiss was denied on the statute of limitations allegations. Then it was allowed to proceed to discovery. And at that point on summary judgment is when they granted that motion on the statute of limitations. But even then, they had a vast array of documents that weren't available here. The DOJ directly referenced Google and its papers. There are various media articles that publicize. There's nothing here like that. Disney wasn't referenced in the DOJ's articles. They only reference the Pixar subsidiary. But then what the district court found in that regard was that the Pixar-related allegations were sufficient in this case to put you on inquiry notice. And the Second Circuit case, Benfield, I think, if I recall it correctly, which holds that knowledge of third-party conduct but related, closely related to the defendant was sufficient. So how do you distinguish that? I see my time is up. May I proceed? Thank you, Your Honor. So how I distinguish that is that case is not actually a shareholder-derived case. It is a fraudulent options case whereby there is actually a regulation that imposed joint and several liability on Makoto for merchants like ITG who sold their options. And it's actually disclosed in the options. There's a contract statement that discloses that Makoto is jointly and severally liable for things such as fraudulent stock sales. There's nothing like that here. There is no contract agreement imposing joint and several liability on Pixar for such a conspiracy. In fact, we're not relying on joint and several liability. We're relying on Disney's own conduct in engaging in these illegal, anti-competitive agreements. Thank you, Your Honor. Okay. Thank you, counsel. The case has now been submitted for decision. Thank you for your arguments this morning. And we will be in recess for the morning. All rise.
judges: Thomas, M. Smith, Bucklo